# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

1 SOURCE TOWERS, LLC,
A Delaware limited liability company,

      PLAINTIFF,

      vs.                         Case No. 8:21-CV-01225-SDM-SPF

CITY OF LAKELAND, a municipal
Corporation created by and existing under
The laws of the State of Florida,

      DEFENDANT.

## MOTION TO DISMISS

### (Opposed)

The Defendant, CITY OF LAKELAND, ("The City"), by and through the undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b), hereby Moves to Dismiss this action since the Plaintiff lacks standing and has failed to adequately state a claim. In support thereof, the City argues the following:

**A. Plaintiff Lacks Standing.**

1. This entire controversy is centered around an alleged gap in coverage of an entity that is not a party to this suit, and that was not a party to the proceedings below in front of the City.

2. Nowhere on the face of the Complaint, nor in the thousands of pages of documents attached to it does 1 Source Towers, LLC (referred to herein as "1 Source") allege that they are legally affiliated with or contractually bound to

Verizon in anyway. The facts within the four corners of the documents indicate otherwise.

3. Verizon is not a named party in this litigation.

4. Verizon was not a named applicant in the conditional use application that was submitted to the City. *See* Plaintiff's Exhibit 4.

5. Verizon does not appear in the Agent of Record letters submitted on behalf of the Property Owner. *See* Plaintiff's Exhibit 4, Part 1, 000096-97.

6. Verizon does not appear in the Memorandum of Land Lease Agreement between 1 Source and the Property Owner where the proposed tower is to be placed, and no provision of said Agreement guarantees that Verizon will have a tenancy or subtenancy at the Property; nor does the Agreement have any contingencies regarding Verizon's potential use of the Property. *See* Plaintiff's Exhibit 4, Part 1, 000099-000105. In other words, since the Agreement makes no mention of Verizon, they are not a third-party beneficiary of the Agreement, there is a lack of privity between Verizon and the Property Owner, and Verizon has no legally protected interest in the Subject Property.

7. Plaintiff attaches a letter to the Complaint purporting to be from a Verizon representative, labeled as a "Statement of Need". The letter states that, if the City were to approve the proposed tower, "Verizon Wireless *would be interested* in collocating on this tower and *would negotiate* a lease with One Source Towers, LLC to collocate on their tower facility." *See* Plaintiff's Exhibit 4, Part 1, 000129; (emphasis added).

8. Assuming that this letter is authentic and truthful for purposes of this Motion, it indicates that no lease is currently in existence; and therefore, 1 Source has no legal affiliation or contractual obligation with Verizon regarding the proposed tower at this time. The City asserts that being "interested" in collocating on a future tower is an insufficient affiliation upon which 1 Source may use to invoke the heavy artillery of federal preemption under an alleged effective prohibition claim.

9. Without any legal affiliation or contractual obligation to Verizon, there are no assurances that 1 Source's tower would ever actually serve the provider that is the basis of 1 Source's alleged injury based on effective prohibition.

10. If the Court were to allow this case to proceed, the City's discovery efforts to probe the veracity of statements regarding an alleged gap in coverage and the due diligence exhausted to remedy the alleged gap would be almost entirely directed toward an entity that is not a party to this litigation, and that was not a party in front of the City below; in other words, a non-party without standing to bring this claim on its own. 1 Source would merely be acting as a proxy.

11. In sum, 1 Source is not a provider of wireless services on its own, and therefore, cannot suffer an injury-in-fact based on an alleged gap in coverage for a provider with whom 1 Source has no legal affiliation or contractual obligation regarding the proposed facility in question. Without an existing contractual obligation, 1 Source has no legally protected interest in arguing that the City effectively prohibited Verizon's ability to provide wireless services, and the remedy that

they request is speculative since future negotiations between the two could fail. As such, 1 Source has failed to demonstrate standing to pursue their claims.

## Memorandum of Law: Standing

Standing is a constitutional requirement to invoke the jurisdiction of the Court. *See* U.S. Cons. Art. III, § 2, Cl. 1. In order for a Plaintiff to show standing, they must establish that they (1) have suffered "an injury in fact" that invades "a legally protected interest" and is both "concrete and particularized" and "actual or imminent;" (2) that injury is fairly traceable to the defendant's challenged action; and (3) it is "likely, as opposed to merely speculative," that the injury would be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks and citations omitted).

During the pleading stage, the plaintiff must "clearly ... allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotations omitted). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id* at 1548.

1 Source fails to allege anywhere in the Complaint that it has a legally protected interest in Verizon's wireless coverage area, and therefore, the alleged injury of an effective prohibition is not particularized to 1 Source because, even assuming that it is true, it affects an unaffiliated third party.  Further, a favorable decision regarding the effective prohibition claims would result in a speculative remedy, since negotiations between 1 Source and Verizon could fail, and the Court's extraordinary relief of an injunction has no assurance that its underlying purpose would be fulfilled. 1 Source

could simply negotiate with other providers who may be willing to pay more to locate on the tower, and supposed gaps in coverage would become irrelevant.

In *Cellco P'ship v. Bd. of Sup'rs of Fairfax County, Va.*, 140 F. Supp. 3d 548 (E.D. Va. 2015), the District Court held that Verizon did not have standing where it was not an applicant, it lacked any lease agreement or other enforceable legal interest related to the zoning applications, and that it did not participate in the bulk of the proposal design and application process. The Court stated:

> "[t]his lack of involvement and of a cognizable legal interest demonstrates that Verizon could not have suffered a concrete and particularized injury fairly traceable to the Board's actions. Moreover, any such injury would not be redressable by a favorable decision in this civil action, because even if the Court ordered the Board to approve the Applications, it could not order CWS to allow Verizon to locate on the proposed facility absent a legally enforceable contract." *Id.* at 559–62.

After finding that Verizon lacked standing due to a failure to meaningfully participate below, the Court addressed the claims made by Verizon regarding an effective prohibition for the purposes of developing the record. Nowhere in *Cellco*, did the Court contemplate that the tower developer could assert an effective prohibition claim without Verizon's participation in the suit, and all references by the Court regarding the claim of an effective prohibition were directed toward Verizon as the actual provider of wireless services.

Similar to *Cellco*, Verizon would not have standing to participate in this litigation since they were not a party below, and without a lease in place, they have no protectable legal interest in the outcome. 1 Source cannot assert a claim based on an alleged injury to an unaffiliated non-party that would not have standing to sue on its

own regarding the same underlying issue. 1 Source cannot request an injunction without any real assurance to the Court that such extraordinary relief would actually remedy the alleged harm.

In conclusion, 1 Source lacks standing to assert an effective prohibition claim on behalf of a non-party based on the hope of a future contract with that party.

**B. Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted.**

1. Even assuming arguendo that 1 Source can stand in the shoes of a wireless services provider that it hopes to contract with in the future, and allege an effective prohibition claim on their behalf, 1 Source has failed to meet even the minimum burden of stating a cognizable claim for an effective prohibition based on the four corners of the Complaint and its exhibits. This is true, regardless of which test among the circuit split that the Court applies to determine the elements of the claim.

2. While the Complaint itself makes assertions regarding an alleged gap, the supporting documents attached by the Plaintiff do not bear those assertions out. For example, the power point presentation given to the City purporting to argue for Verizon's RF need for the tower indicates that Verizon is seeking to remedy a *prospective capacity* issue, not an actual, *existing significant gap* in coverage. *See* Plaintiff's Exhibit 4, Part 1, 000117 – 000128.

3. First, the presentation indicates a clear distinction between the terms "coverage" and "capacity". *See* Plaintiff's Exhibit 4, part 1, 000118. The term "coverage" is then noticeably absent from the remainder of the presentation

because the tower is not needed based on a lack of coverage. The presentation states that the "*existing* network" is a "known *capacity* limited area," and that is the basis of the request. (emphasis added). Nowhere does the presentation indicate that Verizon lacks actual coverage in the area, let alone a *significant gap* in coverage.

4. Second, the presentation further indicates that there is coverage in the area by acknowledging that "the current average serving signal level strength in that general geographical area for the past 30 days is -104.1 dBm." *See* Plaintiff's Exhibit 4, part 1, 000118.

5. Third, the presentation indicates that not only is Verizon's purported need merely a *capacity* issue, it is a prospective one; wherein it states, that the existing network cells in the area "are <u>forecasted to reach capacity in the near future</u>". *See* Plaintiff's Exhibit 4, Part 1, 000120.

6. Fourth, the presentation included an arbitrarily bifurcated red/green map. The map shows that there is coverage throughout the area, albeit some of the coverage is conclusively labelled red as "unreliable". *See* Exhibit 5, Part 1, 000633-000634. Neither the map nor the testimony that accompanied it gave any indication as to what standard was used to determine what is "reliable" versus "unreliable," but usage of the term indicates that at least a minimal amount of coverage exists in the unreliable areas, even if it may be suboptimal.

7. Next, apart from the presentation, Verizon's purported "Statement of Need" states that, "[t]his site will allow Verizon Wireless to *expand service on our existing*

*network* to meet the current and *future demands*". *See* Plaintiff's Exhibit 4, Part 4, 000622, (emphasis added).

8. Outside of the Plaintiff's exhibits, supplemental documentation further illustrates that the facts do not support 1 Source's naked assertion regarding the alleged gap in coverage.

9. Verizon's own published coverage map that they use for marketing purposes to prospective clients, shows that virtually the entire City of Lakeland enjoys "5G Nationwide" coverage on Verizon's existing network. *See* Exhibit 1.

10. It seems disingenuous that Verizon would market to prospective customers a network of full 5G coverage in the City of Lakeland; meanwhile, 1 Source argues to this Court that there's a significant gap that warrants an injunction.

11. The Federal Communications Commission's (FCC) coverage map studies based on Form 477 filings show that the City of Lakeland enjoys LTE Wireless coverage from at least four (4) different wireless providers. *See* Exhibit 2.

12. Finally, a review of data from antennasearch.com, an organization that tracks cellular towers and antennas based on FCC filings, shows that in the area of central Lakeland near this proposed tower site, there are no less than 65 cell towers with 292 antennas, all within a 3 square mile radius. *See* Exhibit 3.

13. In other words, regardless of which test the Court employs to interpret an effective prohibition, 1 Source has failed to adequately state a claim. The City's denial of 1 Source's single tower application cannot have the "effect of prohibiting the provision of personal wireless services" simply because an

unaffiliated non-party has a projected need for additional capacity on its existing network sometime in the future, and 1 source hopes to negotiate a future contract with them. A motion to dismiss is warranted when a Complaint is merely a formulaic recitation of the elements based on naked assertions devoid of any real factual support.

14. In sum, the facts as presented by the Plaintiff in the four corners of the Complaint and supporting exhibits show that there is no actual gap in coverage, let alone a *significant* one, and as a result, there can be no effective prohibition.

### Memorandum of Law: Inadequate Pleading of Effective Prohibition

The federal pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*

"[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion of a legally cognizable right of action on the assumption that all the allegations in the complaint are true." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted).

There is no binding precedent in the 11th Circuit regarding the interpretation of the meaning of an effective prohibition under § 332(c)(7)(B)(II). As such, the elements of the claim are unclear. Other circuit courts have interpreted the law, and have done so in a variety of ways. Understandably, the Plaintiff asserts that this Court should apply the most liberal construction of the term found among the circuit split. *See* Complaint

Para. 28 and 33. The Plaintiff incorrectly states that the Middle District will apply the 9th Circuit's effective prohibition test. *See* Complaint Para. 33. However, the discussion regarding effective prohibition in the Plaintiff's cited case was clearly dicta. *See PI Telecom Infrastructure, LLC v. City of Jacksonville, FL*, 104 F. Supp. 3d 1321 (M.D. Fla. 2015).

In *PI Telecom*, the Court *upheld* the City's decision based on substantial evidence. Further, the Court acknowledged that, 1) the Eleventh Circuit has not yet addressed the issue of effective prohibition; 2) the court assumed arguendo that a significant gap existed, and it was unclear from the opinion whether that issue was seriously contested by the parties; and 3) regardless of which test the Court applied, the provider failed to meet the burden from a lack of due diligence in exploring alternative sites. *Id*. at 1346. Judge Corrigan's thoughtfully written opinion is entitled to careful consideration, and it should not be misconstrued. The district court is not bound by its previous decisions, and certainly not on issues that were not raised by the parties or were not dispositive to the controversy in front of the court.

The City asserts that, if it is necessary, the Court should apply the 4th Circuit's well-reasoned interpretation that "case-by-case denials of permits for particular sites cannot, without more, be construed as a denial of wireless services." *See AT & T Wireless PCS v. City Council of Virginia Beach*, 155 F.3d 423, 428–29 (4th Cir.1998). The 4th Circuit's approach more closely adheres to the *actual language* of the statute, which is that the City "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." § 332(c)(7)(B)(II). Black's law dictionary, ninth edition, defines

"prohibition" to mean "a law or order that forbids a certain action." Nothing about the City's denial of 1 Source's single tower application forbids the provision of wireless services in the City. On the contrary, as the attached FCC coverage and antenna maps show, personal wireless services currently exist throughout the City of Lakeland, and Plaintiff fails to allege otherwise.

Furthermore, 1 Source is not a provider of wireless services, and they have provided no evidence that a different, better-suited application for a cell tower would also inevitably be denied. The attached antenna maps show that the City has a history of approving cell tower applications when the conditions are appropriate. The City's land development code expressly allows for personal wireless service facilities, and is intended to "promote the development of an advanced wireless communication infrastructure." *See* City of Lakeland Land Development Code Article 5, Section 5.18.1. The Plaintiff fails to allege anything more than the denial of a single application to construct a tower that would allegedly improve the future capacity desires of a single, unaffiliated provider. 1 Source fails to allege that they would even be legally obligated to give space on the tower to said provider. The Complaint fails to allege any general policy of hostility toward cell towers or cell service by the City of Lakeland, and it contains no evidence regarding the signal strengths of other providers in the area. The Court should not stretch the interpretation of the phrase "effect of prohibition" beyond recognition of the plain meaning of these terms. If the Court were to accept 1 Source's theory of the law, any obstacle to a tower builder allegedly

attempting to expand an unaffiliated provider's network would amount to a violation of federal law and completely eviscerate traditional local authority.

Even if this Court were to adopt the 9th Circuit's more liberal construction of the effective prohibition, wherein the provider must (1) show a "significant gap" in service coverage and (2) the Court must make some inquiry into the feasibility of alternative facilities or site locations. *See MetroPCS, Inc. v. City & County of San Francisco*, 400 F.3d 715, 731 (9th Cir. 2005), *abrogated by T-Mobile S., LLC v. City of Roswell, Ga.*, 574 U.S. 293 (2015), the Plaintiff fails to sufficiently make such a claim.

As stated, the Plaintiff is not a provider of personal wireless services as defined by the Act, and Plaintiff has failed to show that an actual provider has any legally protectable interest in this proposed tower. Title 47 U.S. Code § 153 contains definitions, but does not define "personal wireless services". However, the 2nd Circuit has conducted a lengthy analysis and concluded that "personal wireless services" is defined in this manner:

> "Putting together the first and third components of the definition of 'personal wireless services,' those relevant to this case, we can conclude that the local government is proscribed from prohibiting for-profit radio communication services carried on between mobile stations or receivers and land stations that (1) are connected to the national telephone network and that (2) provide wireless phones with access to telephone exchange services or facilities for the purpose of the origination or termination of telephone toll services." *See Sprint Spectrum L.P. v. Willoth*, 176 F.3d 630, 642 (2d Cir. 1999)

Merely constructing a tower for others to potentially use, does not transform 1 Source into a *provider* of personal wireless services. 1 Source has no direct connection

to users and does not provide wireless phones with access to telephone exchange services.

1 Source's claim relies entirely on the coverage capacity of only one entity, Verizon. 1 Source's failure to show a contract with Verizon likely indicates that Verizon has not yet determined that this site is the only location available for it to increase the capacity of its existing network. In addition, it shows that Verizon does not really need the facility to operate here. The Plaintiff's own exhibits show that Verizon has an existing network with wireless signal in the described area, and that the alleged need is based on a prospective future desire for more capacity. The City's action cannot have the effect of prohibition where the Plaintiff's own documents show that there is an existing network, and Verizon is already providing wireless services in the area.

In summary, both Counts I and II of the Complaint are based on an anticipated *future* capacity desire of a third party wireless provider with whom the Plaintiff currently has no contractual obligation or legal affiliation regarding the proposed tower. As such, the Complaint makes an unsupported assertion that the City effectively prohibited wireless services based on a gap in coverage that doesn't currently exist and doesn't directly affect any legally protectable interests of the Plaintiff. Therefore, a claim of an effective prohibition fails under any standard.

**C. Substantial Evidence does not require the City to address the coverage capacity desires of a non-party.**

1. The Plaintiff asserts as Count II of the Complaint, that as part of the Substantial Evidence Test, the City must consider the wireless coverage

capacity of an entity who was not the applicant in front of the City; whom has no privity with the Property Owner; and whom has no legally protectable interest in the outcome.

2. The Plaintiff argues that the City must consider this non-party entity's coverage capacity issue by applying complicated and unsettled case law dealing with a term of art that the federal circuit courts are split over in their own interpretation. Further, since there is no binding precedent on the elements of an effective prohibition claim from the 11th Circuit, the Plaintiff's argument would require the City Commissioners to review a myriad of federal court decisions from beyond the City's jurisdiction; presumably, to pick one and apply it as part of the City's land use review. The Plaintiff fails to explain why the City should not have applied 4th Circuit case law to its inquiry as opposed to the 9th Circuit's. Accordingly, the Plaintiff's theory puts the City in the apparent position of resolving federal circuit splits while reviewing basic land use proposals. This is quite obviously an unmanageable standard for the Court to impose on the City's land use review process, and it is clearly not the standard for the requirements of "substantial evidence" as courts have defined the term.

3. The Plaintiff acknowledges in the Complaint that the City's decision was based on the staff report and the City's Land Development Code. *See* Complaint Para. 55.

4. At no point in the Complaint, does the Plaintiff contend that the City's Staff Report does not contain substantial evidence within it; nor does the Plaintiff contend that the City's professional planning staff provided incompetent or irrelevant testimony to support their recommendation of denial. In other words, the Plaintiff's entire attack on the validity of the Staff Report is not based on what is in it, but rather, what is not.

5. The city's code regarding cell towers does not contain any criteria that would require the City to specifically consider the future network capacity goals of a wireless service provider, let alone for a provider that is not even a party to the application pending before the City.

6. The Plaintiff has not alleged in any way that the City's land development code is inadequate in and of itself; or that the criteria contemplated therein do not comply with federal law.

7. Under the Plaintiff's theory of the federal law, the City must disregard its own duly-adopted code, and instead, apply complicated and unsettled case law from jurisdictions beyond the City, and for the benefit of an entity that is not directly involved in the pending land use process and not legally affiliated with or contractually bound to the Applicant or the Property Owner.

8. This is certainly not what Congress had in mind when it employed the term "Substantial Evidence". Rather, substantial evidence is a deferential standard that requires only that the City's decision be supported with more

than a mere scintilla of competent evidence. *See Preferred Sites, LLC v. Troup County*, 296 F.3d 1210, 1218 (11th Cir. 2002). It does not require the City to expressly consider and then select its preferred interpretation of federal law among the split circuits regarding the interpretation of a term of art. The City Commission is not a federal court, and the substantial evidence test does not require it to pretend to be one.

9. The Substantial Evidence Test only requires the Court to look at the evidence that is present in the Record to determine if it is competent to support the decision. It does not require the Court to look for evidence that is missing related to elements that are not even a part of the local government's expressly codified considerations.

> "A court cannot substitute its own judgment for that of the local board, but it must overturn the board's decision if the decision is not supported by substantial evidence. As a result, the TCA's requirement that local decisions be supported by <u>substantial evidence does not affect or encroach upon the substantive standards to be applied under established principles of state and local law</u>." *See Preferred Sites, LLC v. Troup County*, 296 F.3d 1210, 1218–19 (11th Cir. 2002) (internal citations and quotations omitted) (emphasis added).

10. Plaintiff asserts that review of an alleged effective prohibition is conducted *de novo* and without deference to the local jurisdiction. *See* Complaint, Para 9. The City agrees. As such, there is no benefit to the local government attempting to act as a federal court and interpret and apply unsettled federal case law on this issue. The City's attempt to do so would be outside of the bounds of its own codified criteria, and outside of its expertise as a body.

11. Finally, under Florida law, a report and recommendation from the City's Professional Staff will constitute substantial competent evidence upon which to base a land use decision. *Hillsborough County Board of County Comm'rs v. Longo*, 505 So. 2d 470 (Fla. 2d DCA 1987). Therefore, the city's denial based on the City Staff Report was a denial based on substantial evidence that was contained therein. Since the Plaintiff fails to attack any substance within the Staff Report, they have failed to state a cognizable claim regarding an alleged lack of substantial evidence.

## D. Plaintiff fails to adequately plead that RF Emissions were improperly the basis of the decision.

1. Finally, the Plaintiff alleges that simply because RF Emissions were discussed at the hearing in front of the City Commission, that the decision is now tainted such that the Court should inject itself into the traditional business of the local government, and Order the City to approve construction of a cell tower against the will of its elected officials, professional planning staff, and its citizens. This is not what the federal law says, and such a course of action has major federalism concerns.

2. As stated above, the Plaintiff concedes in the Complaint that the City's decision was ultimately based on the City's Professional Staff Report and Recommendation. The Complaint fails to allege any material deficiency in

said Report; nor does the Complaint attack any of the facts or opinions stated by City Staff therein.

3. The federal preemption regarding RF emissions states,

> "No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities <u>on the basis</u> of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." § 332(c)(7)(B)(iv) (emphasis added).

4. Regarding RF Emissions, The City Staff Report specifically states:

> "Other testimony provided at the public hearing expressed concerns for the proximity to Lakeland Christian School, along with the perceived health impacts related to radiofrequency (RF) radiation emissions. However, the 1996 Telecommunications Act, as amended, specifically prohibits state and local governments from regulating the placement, construction, and modification of personal wireless facilities on the basis of the perceived health impacts of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." *See* Plaintiff's Exhibit 8, Part 4, 001712, Paragraph 3, Page 6 of the City Staff Report.

5. In addition to the Staff Report, both the City Commission and the City's Planning and Zoning Board (P&Z) were advised by legal counsel that RF Emissions were not a proper basis for a decision. *See* Exhibit 5, Transcript Pages 46, Lines 16 – 25 to Page 48, Lines 1 – 19. 000734 – 000736; *See also* Exhibit 9, Transcript Page 112, Lines 9 – 16. 00214.

6. Therefore, the City made every effort possible to comply with the preemption through the advice of professional staff and legal counsel to the P&Z Board and the Commission. The Commission expressly ratified the decision of the P&Z Board, who expressly relied on the City Staff Report.

The Report clearly and expressly disclaimed the ability to regulate the proposed cell tower on the basis of RF Emissions. The City cannot control the testimony of citizens who may not be familiar with the complex statutory scheme that is the Telecommunications Act of 1996 – a law which Justice Scalia has described by saying, "[i]t would be [a] gross understatement to say that the Telecommunications Act of 1996 is not a model of clarity." *AT & T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 119 S.Ct. 721, 738, 142 L.Ed.2d 835 (1999).

7.  The Eastern District of Virginia addressed the question of when a local government violates the preemption regarding RF Emissions. The Court held that it could not find that RF Emissions were the basis of the decision if it "would have to draw additional and unsupported inferences" from the Record in order to come to such a conclusion. *See T-Mobile Ne. LLC v. Loudoun County Bd. of Sup'rs*, 903 F. Supp. 2d 385, 408 (E.D. Va. 2012), *aff'd*, 748 F.3d 185 (4th Cir. 2014). However, when the motion to deny is expressly supported by a statement regarding concerns over RF Emissions, then the local government has violated the preemption. In *T-Mobile Ne.*, the local government did not violate the preemption based on comments made in the Record. It wasn't until a Commissioner moved to amend the motion to include RF Emissions as an express reason for denial that the law was violated.

8.  That is clearly not what happened here. Simply because a City Commissioner discussed some concerns that were being raised by her constituents during a public hearing, that does not somehow transform that discussion into the *basis* of the City's decision. Especially so, when the stated basis for the decision (the Staff Report) expressly declares RF Emissions to be off-limits.

9.  The Plaintiff's suggested theory would create a very murky standard that would cause confusion at best and censorship or abuse at worst. For example, if any discussion of RF emissions ultimately taints a local government's decision and entitles a tower developer to walk into federal court and get an injunction, then tower developers everywhere need only raise the issue of RF emissions at a hearing in order to wield the sword of federal preemption, and there would be no need to comply or acknowledge local land development codes or local zoning authorities at all. Alternatively, if the discussion of RF Emissions is completely off-limits, the local government will be forced to silence and censor its constituents who take time off from their day to participate in a land use proceeding that will personally impact them, and who may not be familiar with the law or understand the consequences of the conversation. There are obvious First Amendment concerns with the City being forced into such an untenable position.

10. In sum, the Plaintiff's Complaint fails to adequately make the claim that the environmental impacts of RF Emissions were the basis for the decision when the City relied on its Professional Staff Report which expressly disclaims such a basis.

## CONCLUSION

1 Source has failed to adequately show that it has standing to assert a claim of effective prohibition on behalf of an unaffiliated non-party. 1 Source has failed to show that the Substantial Evidence Test requires the City to consider and apply unsettled case law from other jurisdictions. 1 Source has failed to plead that RF emissions were the basis of the City's decision. As a result, 1 Source lacks standing and has failed to adequately state a claim upon which relief can be granted.

Based on the foregoing, the City requests that this Complaint be dismissed *with prejudice.*

Respectfully submitted,

DATED this 24th day of June, 2021.

OFFICE OF THE CITY ATTORNEY

By: /s/ Jerrod D. Simpson _____
Jerrod D. Simpson, Esq.
Assistant City Attorney
Fla. Bar 0117959
228 S. Massachusetts Ave.
Lakeland, Florida 33831
Phone: (863) 834-6010
Fax: (863) 834-8204
Jerrod.Simpson@lakelandgov.net

## CERTIFICATE OF SERVICE AND GOOD FAITH CONFERENCE

I HEREBY CERTIFY that on this 24th day of June, 2021, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to the following: David Blum, david@davidblumlaw.com; Mattaniah Jahn, mjahn@thelawmpowered.com. I further certify that, pursuant to the Middle District's Local Rule 3.01(g), I have conferred in good faith with opposing counsel regarding the contents of this Motion, and this Motion is opposed in its entirety.

OFFICE OF THE CITY ATTORNEY

By: /s/ Jerrod D. Simpson
Jerrod D. Simpson, Esq.