UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1 SOURCE TOWERS II, LLC,

    Plaintiff,

v.                                            CASE NO. 8:21-cv-1225-SDM-SPF

CITY OF LAKELAND, FLORIDA,

    Defendant.
_____/

## **ORDER**

Under the Telecommunications Act, 1 Source Towers II, LLC, asserts that the City of Lakeland wrongfully denied a "conditional use" permit to build a cell phone tower. First, Source Towers alleges that Lakeland "unlawfully prohibited the provision of personal wireless services" by denying Source Towers' conditional use application. (Doc. 1 ¶¶ 30–50) Second, Source Towers claims Lakeland failed to base the application's denial on "substantial evidence." (Doc. 1 ¶¶ 51–57) Third, because Lakeland officials heard testimony on radio-frequency emissions and "discuss[ed] . . . concerns expressed by registered voters while at the same time indicating that those statements had no bearing on their decision," Source Towers insists that Lakeland impermissibly considered radio frequency emissions. (Doc. 1 ¶¶ 58–63) Arguing that Source Towers lacks standing and fails to state a claim, Lakeland moves (Doc. 7) to dismiss. Source Towers responds (Doc. 12).

## BACKGROUND

The complaint alleges the following. On September 18, 2020, Source Towers applied to the City of Lakeland for a conditional use permit to construct a cell tower at 1800 Harden Boulevard in Lakeland, Florida. (Doc. 1 ¶ 19) Source Towers requested the permit to "solve a gap" in Verizon Wireless' service, a gap which consists of a "deficiency of in-building coverage and traffic capacity in the area." (Doc. 1 ¶ 14) If Lakeland grants the application, Source Towers intends to construct a 110' tall tower that would service a 3.71 square mile area in southwest Lakeland. The application (1) included "documentation and consideration" of eight factors that under Lakeland's Land Development Code govern conditional use permitting and (2) included research, conducted over the course of three years, evaluating fourteen alternative sites. (Doc. 1 ¶ 19)

On January 20, 2021, Lakeland's Planning and Zoning Board held a public hearing, at which two residents opposed the tower and Lakeland's staff recommended denying the application. According to Source Towers, neither Lakeland's staff nor the Planning and Zoning Board addressed whether denial of the application would "effectively prohibit" Verizon from solving a significant gap in service. (Doc. 1 ¶ 22) The Planning and Zoning Board denied the conditional use permit.

On February 18, 2021, Source Towers appealed the denial to the Lakeland City Commission. The commission held a hearing on April 19, 2021, at which

hearing a commissioner "engaged in a discussion and questions related to the health effects of [radiofrequency] emissions." (Doc. 1 ¶ 24) Concluding that the Planning and Zoning Board's decision "was procedurally proper under the City's Code," the City Commission issued a written decision denying Source Tower's appeal. (Doc. 1 ¶ 24) Source Towers sues (Doc. 1) for a declaration that Lakeland's denial violates the Telecommunications Act and for an injunction directing Lakeland to approve the conditional use permit.

## DISCUSSION

I. Standing

Claiming that Source Towers provides no wireless services "on its own," Lakeland argues that Source Towers suffered no "injury-in-fact" from denial of the conditional use application and contends that the complaint warrants dismissal for lack of Article III standing. (Doc. 7 at 3–4) In support, Lakeland states that Source Towers failed to allege a "legally protected interest in Verizon's wireless coverage area." (Doc. 7 at 4) According to Lakeland, absent a protected interest (*e.g.*, a "legal affiliation" or contractual obligation), no particularized injury results from Lakeland denying Source Towers' application. (Doc. 7 at 3–4)

Lakeland cites no Eleventh Circuit authority to support the argument that Source Towers lacks Article III standing. Instead, Lakeland relies on *Cellco Partnership v. Board of Supervisors of Fairfax County*, 140 F. Supp. 3d 548, 561 (E.D. Va. 2015). *Cellco* holds that a non-applicant without "any contractual or property

interest" fails to show constitutional standing. 140 F. Supp. 3d at 561. However, *Cellco* finds that a co-applicant, even without a property interest, maintains a "sufficient personal stake" in the outcome of an application and suffers a "concrete injury" "fairly traceable to the denial." 140 F. Supp. 3d at 562. Because Source Towers applied for the conditional use permit, Source Towers more closely aligns with the co-applicant than the non-applicant in *Cellco*. Although not governing this action, *Cellco* supports the conclusion that Source Towers suffered an injury-in-fact. By claiming that Lakeland improperly denied Source Towers' conditional use application, Source Towers alleges a particularized injury that satisfies Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992).

II. Effective Prohibition

Challenging Count I, Lakeland argues that Source Towers inadequately pleads an "effective prohibition" of wireless services. (Doc. 7 at 6) Under 47 U.S.C. § 332(c)(7)(B)(i)(II), "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services." Lakeland contends that "case-by-case denials of permits for particular sites cannot, without more, be construed as a denial of wireless services." *AT&T Wireless PCS v. City Council of Virginia Beach*, 155 F.3d 423, 428–29 (4th Cir. 1998). According to Lakeland, because personal wireless

services exist throughout the city, no effective prohibition results from the denial of Source Towers' application. (Doc. 7 at 10–11)

The parties acknowledge that no governing authority defines the "effect of prohibiting the provision of personal wireless services." *See Wireless Towers, LLC v. St. Johns Cnty.*, 690 F. Supp. 2d 1282, 1296 n.11 (M.D. Fla. 2010). However, district courts within the Eleventh Circuit recognize that "a locality can run afoul of the [Telecommunication Act]'s 'effective prohibition' clause if [the locality] prevents a wireless provider from closing a 'significant gap' in service coverage." *PI Telecom Infrastructure, LLC v. City of Jacksonville*, 104 F. Supp. 3d 1321, 1346 (M.D. Fla. 2015) (internal quotation omitted); *see also TowerCom V, LLC v. City of College Park*, No. 1:13–cv–530–SCJ, 2013 WL 4714203, at *9 (N.D. Ga. Aug. 21, 2013). In short, "even in the absence of a general ban on wireless services," a local authority effectively prohibits the provision of wireless services if the local authority prevents the closing of a "significant gap" in coverage. *T-Mobile South, LLC v. City of Milton*, No. 1:10-CV-1638-RWS, 2015 WL 13687970, at *4 (N.D. Ga. Nov. 2, 2015) (citing *Powertel/Atlanta, Inc. v. City of Clarkston*, No. 1:05-CV-3068-RWS, 2007 WL 2258720, at *5 (N.D. Ga. Aug. 3, 2007)).

The complaint adequately pleads an effective prohibition claim. Source Towers asserts that Lakeland's denial of the conditional use application prevents the closing of a 3.71 square mile "gap in [Verizon's] wireless service, consisting of a deficiency of in-building coverage and traffic capacity in the area." (Doc. 1 ¶ 14)

- 5 -

According to the complaint, the gap comprises an area in which 1,600 users connect to the network per hour and 6,000 unique devices connect to the network daily. (Doc. 1 ¶¶ 14 and 35)

In addition to alleging a significant gap in wireless coverage, Source Towers claims that the proposed cell tower solves the service gap by adopting the "least intrusive means" possible. *See TowerCom V*, 2013 WL 4714203, at *10 (applying the "least intrusive means test"); *T-Mobile South, LLC v. City of Milton*, 2015 WL 13687970, at *8 (same). The "least intrusive means" test requires "a showing that a good faith effort has been made to identify and evaluate less intrusive alternatives, *e.g.*, that the provider has considered less sensitive sites, alternative system designs, alternative tower designs, placement of antennae on existing structures[.]" *APT Pittsburgh Ltd. P'ship v. Penn Tp. Butler Cnty. of Pa.*, 196 F.3d 469, 480 (3d Cir. 1999). Source Towers alleges considering alternative "parcels prior to filing the conditional use" and claims eliminating each parcel because of availability, adequate ground area, or failure to solve Verizon's gap in service. (Doc. 1 ¶ 42) For example, the complaint incorporates the findings of a three-year acquisition search in which Source Towers evaluated fourteen different locations in an attempt to identify a "suitable property" compliant with Lakeland's code. (Doc. 1-6 at 1) Finding no suitable or available substitute for the 1800 Harden Boulevard site, the report evaluates eight properties "outside the search area" and finds no reasonable alternative. (Doc. 1-6 at 22–23) In sum, the complaint includes sufficient facts

alleging that no alternative locations for the cell tower existed "*within reason* or which could be considered *reasonable* alternatives." *T-Mobile South, LLC v. City of Margate*, No. 10–cv–60029, 2011 WL 1303898, at *4 (S.D. Fla. Apr. 4, 2011) (emphasis in original).

    III.    Substantial Evidence

Under 447 U.S.C. § 332(c)(7)(B)(iii), "[a]ny decision . . . to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." In Count II, Source Towers alleges that Lakeland failed to show with substantial evidence whether denial of the application "would effectively prohibit Verizon from solving a significant gap in Verizon's service." (Doc. 1 ¶ 54) Moving to dismiss, Lakeland contends that the report and recommendation from Lakeland's professional staff constitutes substantial evidence for a land use decision. *See Hillsborough Cnty. Bd. of Cnty. Comm'rs v. Longo*, 505 So. 2d 470 (Fla. 2d DCA 1987). In opposition, Source Towers claims that the City Commission's review of the Planning and Zoning Board's decision failed to include a *de novo* review of the merits of the application. (Doc. 12 at 12)

The Telecommunications Act's "substantial evidence" standard requires a local government's decision denying a cell tower to include "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Preferred Sites, LLC v. Troup Cnty.*, 296 F.3d 1210, 1218 (11th Cir. 2002) (citing *Consol. Edison*

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also PI Telecom Infrastructure, LLC v. City of Jacksonville*, 104 F. Supp. 3d 1321, 1341–42 (M.D. Fla. 2015). The substantial evidence test demands "more than a mere scintilla but less than a preponderance." *Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 762 (11th Cir. 2005). A "procedural safeguard," the substantial evidence test "is centrally directed at whether the local zoning authority's decision is consistent with the application local zoning requirements." *T-Mobile South, LLC v. City of Jacksonville*, 564 F. Supp 2d 1337, 1345 (M.D. Fla. 2008) (describing the substantial evidence test as "highly deferential to the local authority").

Source Towers alleges enough facts to state a claim that denial of the application lacked substantial evidence. Source Towers asserts that the City Commission denied the appeal "on the basis that [the commission] believed the Planning and Zoning Board's decision was procedurally proper under the City's Code." (Doc. 1 ¶ 24) According to Source Towers, because the City Commission failed to evaluate "on the merits" an alleged substantial gap in Verizon's coverage, the City Commission's decision lacks substantial evidence. (Doc. 1 ¶ 24) Although Lakeland claims that the report and recommendation from the City's Professional Staff "will constitute substantial competent evidence upon which to base a land use decision" (Doc. 7 at 17), Lakeland identifies nothing in the report and recommendation that comprises substantial evidence for denying Source Tower's application. Accordingly, determining whether the City Commission adequately

supported the denial with substantial evidence "is more appropriately resolved by way of a motion for summary judgment." *See Primesite Consulting Grp., Inc. v. City of Tampa*, No. 98–2085–CIV–T–24(B), 1999 WL 33743961, at *2 (M.D. Fla. May 27, 1999) (concluding that evaluation of substantial evidence requires a district court "to look beyond the pleadings").

IV. Radio Frequency Emissions

Under 47 U.S.C. § 332(c)(7)(B)(iv), no local authority "may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the [Federal Communication] Commission's regulations concerning such emissions." In Count III, Source Towers asserts that Lakeland "discuss[ed] on the record the health effects, fears, and concerns expressed by registered voters while at the same indicating that those statements had no bearing on their decision." (Doc. 16 ¶ 61) To Source Towers, Lakeland improperly weighed radio frequency emissions in denying Source Tower's appeal.

Although the complaint alleges a "discussion" on radio frequency emissions, no allegation in the complaint supports the conclusion that Lakeland based the denial on the environmental effects of radio frequency emission. The complaint instead states that "the Planning & Zoning Board based its decision upon the staff report and the Code. Finally, the Commission based its decision on its perceived

procedural propriety of the Planning & Zoning Board's decision." (Doc. 1 ¶ 55) The staff report states:

> Other testimony provided at the [December 15, 2020] public hearing expressed concerns for the proximity to Lakeland Christian School, along with the perceived health impacts related to radio frequency (RF) radiation emissions. However, the 1996 Telecommunications Act, as amended, specifically prohibits state and local governments from regulating the placement, construction, and modification of personal wireless facilities on the basis of the perceived health impacts of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

(Doc. 1-17 at 41)

Concluding that the commission improperly based the application's denial on radio frequency emissions requires unsupported inferences from the complaint and attached exhibits. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As Lakeland correctly notes, the staff report expressly rejects basing the denial on radio frequency emissions. In the complaint, Source Towers includes no fact connecting the commission's affirmance (allegedly based on the board's "perceived procedural propriety") to the commission member's discussion on radio frequency emissions. Even viewed charitably, Count III warrants dismissal.

## CONCLUSION

For these reasons, the motion (Doc. 7) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Count III is **DISMISSED**. Not later than **MARCH 31, 2022**,

Source Towers may amend the complaint. Also, not later than **MARCH 31, 2022**, the parties must submit a case management report.

After Lakeland's motion (Doc. 8) to strike from the complaint Source Tower's demand for an attorney's fee and costs, the parties stipulate (Doc. 11) that remedies under the Telecommunications Act do not include an attorney's fee and costs. *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 114 (2005). Accordingly, the motion (Doc. 8) is **GRANTED**.

ORDERED in Tampa, Florida, on March 17, 2022.

*/s/ Steven D. Merryday*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE