UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| 1 SOURCE TOWERS II, LLC, )<br>    Plaintiff,                                   )<br>                                                   )<br>v.                                             )<br>CITY OF LAKELAND, a municipal )<br>Corporation created by and existing under )<br>The laws of the State of Florida,          )<br>    Defendant.                               ) | Civil Action No.:<br>8:21-CV-01225-SDM-SPF |

**AMENDED COMPLAINT SEEKING DECLARATORY RELIEF
AND REQUESTING EXPEDITED PROCEEDINGS**

Plaintiff, 1 SOURCE TOWERS II, LLC ("1 SOURCE" or "Plaintiff"), sues Defendant CITY OF LAKELAND, FLORIDA ("Defendant") and alleges:

**The Parties**

1. Plaintiff, 1 SOURCE TOWERS II, LLC is a Delaware limited liability company, that is a party adversely affected by Defendant's Denial of Plaintiff's application.

2. Defendant, City of Lakeland, Florida, is a duly authorized Municipal Corporation constituted and existing under the laws of the State of Florida that has the authority, among other things, to grant conditional use permits under the Land Development Code (the "Code"). The legal framework is found in the Code at Section 5.18 *et seq.* with the conditional use permit process beginning at Sub- Section 5.18.7 *et seq.*

## Jurisdiction & Venue

3. This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331, because it arises under the Federal Communications Act of 1934, as amended by the Telecommunications Act of 1996 ("TCA"), in particular 47 U.S.C. § 332(c)(7)(B). This Court also has jurisdiction over this action under 28 U.S.C. § 1337(a), because the Federal Communications Act and TCA are acts of Congress regulating commerce.

4. This Court has jurisdiction to order declaratory and injunctive relief under 28 U.S.C. § 2201 and 2202 because there is an actual controversy between the parties.

5. Venue is proper in this district under 28 U.S.C. § 1391(b), because Defendant is located in this district, "a substantial part of the events giving rise to the claim occurred" in this district, and "a substantial part of the property that is the subject of the action is situated" in this district.

## Standard of Review

6. This action seeks relief for the following 2 claims under Section 332 of the Telecom Act, they are: 1) Failure to provide a written decision supported by substantial evidence ("Substantial Evidence"), and 2) Rendering a decision on a communication tower application that prohibits or has the effect of prohibiting wireless service to a geographic area ("Effective Prohibition").

7. Failure to provide a written decision supported by substantial evidence

could best be described as Federal Certiorari review of a communication tower application. A federal court under a Substantial Evidence claim performs its review in a manner that is deferential to the local jurisdiction.

8. Extrinsic evidence may not be introduced. The adjudicator is not allowed to re-weigh the evidence that was before the local jurisdiction but, rather, examines whether the decision of a local jurisdiction was supported by Substantial Evidence. Substantial Evidence is considered to be between a mere scintilla and a preponderance of the evidence.

9. Rendering a decision that prohibits or has the effect of prohibiting wireless service to a geographic area (Effective Prohibition) is a *de novo* review, giving no deference to local jurisdiction.

10. A local jurisdiction can engage in effective prohibition even if its decision is supported by substantial evidence. Extrinsic Evidence is allowable under effective prohibition review.

**Expedited Proceeding**

11. Pursuant to 47 U.S.C. § 332(c)(7)(B)(v) of the TCA, Plaintiff respectfully requests expedited treatment of this Complaint as to relief for the claims based on Substantial Evidence and Effective Prohibition.

**General Allegations**

12. Verizon Wireless ("Verizon") is licensed by the Federal Communications Commission to provide personal wireless services throughout Polk

County, Florida, including the Harden Blvd. Area.

13. Verizon requested 1 SOURCE construct a tower for Verizon in the area in and around 1800 Harden Blvd., Lakeland, FL 33803 to solve a gap in their wireless service, consisting of a deficiency of in-building coverage and traffic capacity in the area.

14. On December 4, 2019, 1 SOURCE submitted a request for a Concept Plan Review to allow a 110' tall AGL Monopole Communication Tower ("1 SOURCE's Tower") at 1800 Harden Blvd., Lakeland, FL 33803 (the "Harden Blvd. Site") serving the areas surrounding Harden Blvd, Ariana Street, and Beacon Rd. in Southwest Lakeland, FL ("Harden Blvd. Area"). Attached hereto and incorporated by reference is Composite Exhibit 1, Pre-Application Request.

15. 1 SOURCE's Tower was intended to support Verizon's antennas at its top allowing Verizon to solve its 3.71 square mile service gap in the Harden Blvd. Area, 1 SOURCE's Tower was also provisioned to co-locate additional wireless carriers lower on the tower as the need arose.

16. There were discussions with the Defendant's Community & Economic Development Department ("Staff") to review the Conditional Use application and possible revisions including and explanation of alternative sites that were considered (Bates No. 62-65); and, prior conditional use site(s) Defendant had previously approved (Bates No. 40-41). Attached hereto and incorporated by reference is Composite Exhibit 2 – Phillip Scearce Documents.

17. Letters were mailed out to property owners around 1 SOURCE's Tower and a balloon test was performed with little to no public comment. Attached as Composite Ex 3 – Neighborhood Mailout.

18. On or about September 18, 2020, 1 SOURCE applied for the conditional use approval ("Conditional Use") for 1 SOURCE's Tower. Said application included documentation and consideration of the 8 factors to be considered in determining whether to grant a conditional use permit pursuant to the Code. The application also again discussed the 14 alternative sites that were considered over the course of 3 years and ultimately not suitable or available. Attached hereto and incorporated by reference is Composite Exhibit 4.

19. On or about December 15, 2020, there was a public hearing before the Planning and Zoning Board on 1 SOURCE's Tower. 1 SOURCE's Tower was opposed by two residents in the Harden Blvd. Area and Staff reported having received 5 e-mails and 3 phone calls on this matter. The December 15, 2020, hearing was continued. Attached hereto and incorporated by reference is a transcript of the December 15, 2020, hearing as Composite Exhibit 5.

20. On January 11, 2021, following the December 15, 2020, hearing, and as requested at the hearing, 1 SOURCE filed supplemental documentation. Attached hereto and incorporated by reference is the Conditional Use – Submittal 2 as Composite Exhibit 6.

21. On or about January 20, 2021, the continuation of the December 15,

2020, hearing occurred. At the January 20, 2021, hearing, Staff recommended denial of 1 SOURCE's Tower. Two residents again voiced their opposition to the project. The Planning and Zoning Board denied the conditional use permit for 1 SOURCE's Tower after discussion about Staff's recommendation. Attached hereto and incorporated by reference is a transcript of the January 20, 2021, Planning and Zoning Board Hearing as Composite Exhibit 7. Neither Staff nor the Planning and Zoning Board addressed 1 SOURCE's contention that denial of 1 SOURCE's Tower would effectively prohibit Verizon from solving a significant gap in its service.

22. On or about February 18, 2021, Plaintiff appealed the denial to the City Commission. Attached hereto and incorporated by reference is the City Appeal Submittal as Composite Exhibit 8.

23. On April 19, 2021, the City Commission held a hearing on the appeal. Ultimately the City Commission denied the appeal, on the basis that they believed the Planning & Zoning Board's decision was procedurally proper under the City's Code. The Commission did not make a decision on the merits of 1 SOURCE's contention that denying 1 SOURCE's Tower would effectively prohibit Verizon from solving a significant gap in its service. Attached hereto and incorporated by reference is a transcript of the April 19, 2021, City Commission Hearing as Composite Exhibit 9.

24. The City Commission and City Commissioners reduced that vote to a written Decision on April 21, 2021. (Bates 1936 – 1941).

25. The City's denial effectively prohibits Verizon from solving its service

gap in the Harden Blvd. Area. Therefore, the TCA requires Defendant to approve 1 Source's TOWER as proposed in the Conditional Use application.

### Federal Law: Telecom Act Effective Prohibition

26. The Telecom Act of 1996 (the "Telecom Act"), codified at 47 U.S.C. § 332 ("Section 332"), outlaws the prohibition or effective prohibition of personal wireless service, disallows a local jurisdiction from denying a request for a wireless communication tower when such prohibits or has the effect of prohibiting the provision or wireless service.

27. Effective Prohibition analysis consists of two main prongs 1) showing a significant gap in service and 2) some inquiry into the feasibility of alternative facilities or site locations.

28. Effective prohibition review asks not just whether a local jurisdiction's decision prohibited the provision of wireless coverage in an area but also whether the decision *had the effect* of prohibiting wireless coverage.

### COUNT I
### LAKELAND UNLAWFULLY PROHIBITED THE PROVISION OF PERSONAL WIRELESS SERVICES IN VIOLATION OF THE TCA, 47 U.S.C. §332(c)(7)(B)(i)(II).

29. Plaintiff re-alleges, repeats, and incorporates by reference, as if fully set forth herein paragraphs 1-28.

30. The TCA provides, in relevant part, that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any

State or local government or instrumentality thereof…shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. §332(c)(7)(B)(i)(II).

31. 1 SOURCE's Tower is a "personal wireless service facilit[y]" providing "personal wireless services" within the meaning of the TCA.

32. A prohibition on the provision of personal wireless services occurs within the meaning of the TCA in the Middle District when there is a significant gap in a wireless carrier's service, the proposed facility is the least intrusive means to fill that gap, and the local jurisdiction denies the proposed facility.

33. The record shows that Verizon has a significant gap in service in Harden Blvd. Area.

34. The gap area:

    a. is an indoor and in vehicle deficiency in Verizon's coverage, which reflects the type of observed cellular use in the area;

    b. possesses a sizeable population, 1 SOURCE estimates it at approximately 11,000, per the 2010 Census;

    c. Verizon would note that during peak hours 1600 user per hour connect to the network, and 6,000 unique devices connect to Verizon's network daily basis;

    d. Possesses heavily traveled roads, Harden Blvd. (37,500 AADT), Beacon Rd. (6,700 AADT), and Arianna St. (4,500 AADT); and is physically

large, 3.71 square miles;

 e. Verizon' towers currently servicing the gap area are lacking adequate capacity to properly serve the gap area, and the capacity issue will continue to grow worse with time.

35. The record demonstrates that neither the Planning & Zoning Board, City Commission, nor the objecting residents put on any analysis or expert testimony countering Verizon's RF need.

36. The objecting residents did submit subjective opinion testimony of Verizon's service in the Harden Blvd. Area, but such testimony is insufficient to counter Verizon's RF reports and expert testimony.

37. The record demonstrates that 1 SOURCE's Tower, as designed, is the least intrusive design possible to address the gap in service:

 a. There are no towers or tall structures for Verizon to collocate on,

 b. Verizon has upgraded its current collocations serving the area to the maximum extent feasible and is still unable to solve the gap,

 c. 1 SOURCE's Tower, at 110' tall, is a 40' compromise from Verizon's most efficient height and the minimum height necessary for Verizon to solve the gap,

 d. The design of 1 SOURCE's Tower, as a close mount monopole, minimizes the tower's visual profile by sacrificing equipment space at the top of the tower to mount the antennas directly to the side of the support pole.

Further, the design routes all cabling for the antennas within the tower itself, and 1 SOURCE's Tower would be completely dark at night.

38. The record shows that 1 SOURCE and Verizon conducted a reasonable inquiry of 14 alternates to both 1 SOURCE's Tower and the Harden Blvd. Area.

39. Verizon analyzed its own network and reviewed the area for towers and other structures of sufficient height to collocate its antennas and equipment upon. Verizon also analyzed its current towers in the area to determine whether they could be reconfigured to solve the gap. Verizon provided RF reports and testimony from Santiago Torres, an RF engineer who was assigned to the project, confirming its findings that a new tower in the Harden Blvd. Area is necessary.

40. Verizon issued a .25-mile radius search ring is centered upon 1800 Harden Blvd in 2016. The center of the search ring is the most efficient location for 1 SOURCE's tower to be located when addressing Verizon's gap in service.

41. 1 SOURCE analyzed 15 parcels prior to filing the conditional use, including the Harden Blvd. Area. 1 SOURCE started at the search ring center and slowly moved around the area until it found the Harden Blvd. Site as it eliminated parcels as either unavailable, lacking adequate space for 1 SOURCE's Tower and its associated ground equipment area, being located too far away to solve Verizon's gap in service or failing to meet the Defendant's setback requirements. 1 SOURCE provided a summary letter and sworn testimony from Justin Dehnert, the site acquisition agent who led the search.

42. The Defendant's staff requested 1 SOURCE and Verizon to research the following locations (collectively, the "City Sites"):

    a. Parcel #23-28-23-000000-022060, city owned land leased to the American Legion (the "American Legion Site"),

    b. Parcel # 23-28-24-000000-044050, privately owned land developed as a building understood to be 5 – 6 stories tall (the "Apartment Building Site"), and

    c. Parcel # 23-28-24-000000-044030, privately owned land that another tower company was attempting to pursue a tower approval upon (the "Ariana Site").

43. 1 SOURCE and Verizon researched the City Sites and ultimately ruled them out as unfeasible alternatives to 1 SOURCE's Tower. The American Legion was unavailable for leasing due to the pre-existing lease between the Defendant and its tenant. The Apartment Building Site was unfeasible because it was too short and located too close to an existing Verizon collocation, as a result, it would both fail to solve the gap and interfere with the existing Verizon collocation. Finally, the Arianna site was unfeasible because it located too close to an existing Verizon collocation, as a result, it would interfere with the existing Verizon collocation.

44. 1 SOURCE then re-analyzed all parcels within a one-half mile radius of 1 SOURCE's Tower to see if any non-residentially developed parcels could support 1 SOURCE's Tower in the context of the reduced setbacks proposed at the Harden Blvd.

Site before filing the Conditional Use application.

45. The City's Code allows communication towers on I-1 zoned parcels as of right when they meet all of the Code's design standards and via conditional use review when those design standards need to be modified, including relief from setback requirements. The record demonstrates that 1 SOURCE's Tower must be located in the Harden Blvd. Area in order to fill the wireless service gap and to adequately address the service needs of the Gap Area.

46. Plaintiff's application fulfills all of the criteria and requirements for approval of the project under the City's Zoning Code and/or Florida law.

47. Injunctive relief to prevent effective prohibition is the proper remedy under the TCA.

48. Defendant's unsupported and legally unsustainable denial of Plaintiff's Application has had and will have the continued effect of prohibiting Verizon from providing wireless services pursuant to its FCC license in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

49. Plaintiff has suffered and will continue to suffer irreparable injury as a result of Defendant's violation of the TCA.

**COUNT II**
**LACK OF SUBSTANTIAL EVIDENCE IN THE WRITTEN RECORD IN VIOLATION OF THE TCA, 47 U.S.C. §332(c)(7)(B)(iii).**

50. Plaintiff re-alleges, repeats, and incorporates by reference, as if fully set forth herein paragraphs1-28.

Page **12** of 15

51. Section 332(c)(7)(B)(iii) of the TCA provides that:

Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

52. 1 SOURCE's Tower is a "personal wireless service facility" as defined in the TCA.

53. 1 SOURCE contended, throughout the entirety of the application process, that denial of 1 SOURCE's Tower would effectively prohibit Verizon from solving a significant gap in Verizon's service.

54. The Defendant's staff did not address this contention in its staff report. Further, the Planning & Zoning Board based its decision upon the staff report and the Code. Finally, the Commission based its decision on its perceived procedural propriety of the Planning & Zoning Board's decision.

55. Defendant has violated Section 332(c)(7)(B)(iii) of the TCA, because their denial of Plaintiff's Application is not based on substantial evidence as it did not address 1 SOURCE's contention during the application that denial of the application would effectively prohibit Verizon from solving a significant gap in its service and thereby necessitate approval to conform with Federal law.

56. 1 SOURCE has suffered and will continue to suffer irreparable injury as a result of Defendant's violation of the TCA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court issue an Order and Judgment:

a. Declaring that Defendants' denial of Plaintiffs' Application prohibits or has the effect of prohibiting the provision of wireless service in violation of 47 U.S.C. §332(c)(7)(B)(i)(II);

b. Declaring that Defendants' denial of Plaintiff's Application constitutes a violation of 47 U.S.C. §332(c)(7)(B)(iii) in that it is not supported by substantial evidence contained in the written record;

c. Declaring that the Defendants' denial of Plaintiff's Application was affected by an error of law, was arbitrary and capricious and an abuse of discretion, and was not supported by substantial evidence based on the entire record;

d. Ordering, directing, and enjoining the Defendants to immediately issue all approvals and permits necessary to allow construction and operation of the proposed 1 SOURCE's Tower, including (without limitation) all building permits, site plan approvals, conditional use permits, and variances;

e. Awarding Plaintiff the costs, disbursements, and expenses of this action; and such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 31, 2022, a true and correct copy of the foregoing Amended Complaint was filed using CM-ECF, which will serve a notice of electronic filing to all counsel of record.

s/ MATTANIAH S. JAHN, ESQ.
MATTANIAH S. JAHN, ESQ
Florida Bar No. 0105256
Mattaniah S. Jahn, P.A.
935 Main Street, Suite D1
Safety Harbor, FL 34695
Primary email: mjahn@thelawmpowered.com
Secondary email: vclark@thelawmpowered.com
Attorney for Plaintiff

s/ DAVID M. BLUM, ESQ.
DAVID M. BLUM, ESQ.
Florida Bar No. 0632759
Mattaniah S. Jahn, P.A.
935 Main Street, Suite D1
Safety Harbor, FL 34695
Primary email: dblum@thelawmpowered.com
Secondary email: david@davidblumlaw.com
Attorney for Plaintiff