UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| 1 SOURCE TOWERS II, LLC,<br>Plaintiff,<br><br>v.<br><br>CITY OF LAKELAND, a municipal<br>Corporation created by and existing<br>under the laws of the State of Florida,<br>   Defendant. | Civil Action No.:<br>8:21-CV-01225-SDM-SPF |

## PLAINTIFF'S PRE-TRIAL BRIEF

Plaintiff 1 SOURCE TOWERS II, LLC ("Plaintiff"), by and through the undersigned counsel, and pursuant to the Court's order on November 21, 2023 (Dkt. 55) submits this brief for consideration:

### Statement of Facts

The statement of facts for the case at bar are located in the Amended Pre-Trial Statement, located in the Docket at Dkt. 56.

### Legal Argument

#### I.    Standing

Established law states that "A party invoking federal jurisdiction does have the burden of establishing that it has satisfied the 'case-or-controversy' requirement of Article III of the Constitution [and] standing is a 'core component' of that requirement." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). "The "irreducible constitutional minimum" of Article III

standing entails three elements: injury in fact, causation, and redressability. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)." Hunstein v. Preferred Collection & Mgmt. Servs., 994 F.3d 1341, 1345 (11th Cir. 2021). The evidence will show that Plaintiff: is a "person" pursuant to Defendant's Land Development Code ("LDC"), Section 1.6, and had a contract with a landholder; suffered an injury in fact due to its expenditure of substantial time and money in its attempt to construct a telecommunications tower, which Defendant denied; and, is capable of receiving redress for said injury by a favorable decision. Thus, there is sufficient evidence to satisfy Article III of the United States Constitution. See Lexmark Intern., Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014); Indus. Communs. & Elecs v. Town of Alton, 646 F.3d 76 (1st Cir. 2011) and Cellco P'ship v. Bd. of Supervisors of Fairfax Cty., 140 F. Supp. 3d 548, 562 (E.D. Va. 2015).

Furthermore, in Preferred Sites LLC v. Troup County, 296 F.3d 1210 (11th Cir. 2002), the 11th Circuit held that Preferred Sites, a tower operator, could bring an action against Troupe County after the Zoning Appeals and Planning Board denied Preferred Sites' application for conditional use approval to construct a multiple user-wireless communication tower. Id. at 1216. The court noted that the Telecommunications Act allows for "any party aggrieved by a state or local authority's 'final action'" to challenge that action ". . . if it is inconsistent with §

704(a)'s[1] requirements, in any court of competent jurisdiction, as long as the challenge is filed within 30 days of the final action." 47 U.S.C. § 332(c)(7)(B)(v); Id. at 1217.

Similarly in Cellco the Court held that CWS, a wireless network infrastructure developer, had standing stating:

> … CWS does have a sufficient personal stake in this matter. The Fourth Circuit does not require that a plaintiff possess a property interest to have standing under the Act, but has found that a plaintiff can have standing based on a contract with a landholder and the expenditure of "substantial time and money." Loudoun Cnty., 748 F.3d at 196-97. CWS was clearly one of the two applicants for the proposed facility, Slip. ¶ 4, and there is no dispute that ACUMC wishes to lease its property to CWS should the Applications be approved. Additionally, CWS was the primary participant in the design and application processes. Cellco 140 F. Supp. 3d at 562.

The Middle District of Florida held the same some three years prior in Primesite Consulting Group, Inc. v. City of Tampa, 98-2085-CIV-T-24(B), 1999 WL 33743961 (M.D. Fla. May 27, 1999). Primesite brought action against the City of Tampa after it was denied a Special Use Permit for the construction of a communications tower within the city limits. Id. The City argued that Primesite lacked standing because Primesite was not a provider of personal wireless services

---

[1] Section 704(a) of the Telecom Act of 1996 is codified at 47 U.S.C §332(c)(7). Preferred Sites at 1214.

as "that term is defined under the Telecommunications Act of 1996." Id. However, the court noted the plain language of the TCA, stating:

> "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality" may commence an action in any court of competent jurisdiction to obtain relief under the Act. 47 U.S.C. § 332(c)(7)(v). Accordingly, the Court finds that the Plaintiff has standing to bring this action. Id.

The court noted that in light of the language in the TCA, Plaintiffs did have standing to bring action under the Act as they were adversely affected by the denial by the City of Tampa. Id. This Court reaffirmed the Middle District's position on standing in its order on the City's Motion to Dismiss the case at bar. Dkt. 18.

## II. Substantial Evidence

### A. Law – Substantial Evidence:

The Telecom Act of 1996, codified at 47 U.S.C. 337, (the "TCA") requires that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. §332(c)(7)(B)(iv)(1934). The power of federal courts to have authority over TCA-related zoning decisions is limited. Am. Tower LP v. City of Huntsville, 295 F.3d 1203, 1207 (11th Cir. 2002). In reviewing an agency's decision, a court is bound by "the traditional substantial evidence standard used by courts to review

agency decisions." Id. at 1208; see also T-Mobile S., LLC v. City of Roswell, Ga., 574 U.S. 293, 815 (2015).  Substantial Evidence is said to be between a mere scintilla and a preponderance of the evidence.  Michael Linet, Inc. v. Vill. of Wellington, Fla., 408 F.3d 757, 762 (11th Cir. 2005).  Generally, a local government should include in its written record the requirements of the local zoning ordinance and the basis for its denial.  Wireless Towers, LLC v. City of Jacksonville, Fla., 712 F. Supp. 2d 1294 (M.D. Fla. 2010) (citing Wireless Towers, LLC v. St. Johns County., Fla., 690 F.Supp.2d 1282, 1294 (M.D. Fla. 2010) and T–Mobile S., LLC v. Coweta County., Ga., Civil Action No. 1:08–CV–0449–JOF, 2009 WL 596012, at *7 (N.D.Ga.2009)).  Therefore, "[w]hen evaluating the evidence [supporting the denial], local and state zoning laws govern the weight to be given the evidence," and the TCA does not "affect or encroach upon the substantive standards to be applied under established principles of state and local law."  Id. (quoting Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 494 (2d Cir. 1999)).

The appeal to the City Commission is based upon Land Development Code Section "12.7 - APPEAL PROCEDURES," which states:

> Any aggrieved or adversely affected party, as defined in Section 163.3215, Florida Statutes, may appeal a decision of the Planning and Zoning Board to the City Commission based upon one or more of the following grounds:
>
> a.  The Planning and Zoning Board failed to properly follow adopted procedure or due process requirements;

b. **The Planning and Zoning Board failed to properly apply adopted standards or regulations;**

c. Administrative staff failed to follow professional practice in performing technical analysis;

d. No competent, substantial evidence was presented to the Planning and Zoning Board to support its decision; or

e. New evidence has been discovered that, through the exercise of proper diligence, could not have been discovered prior to the public hearing before the Planning and Zoning Board. (**emphasis** supplied)

The Eleventh Circuit recently addressed the Substantial Evidence Standard in Mun. Communications, LLC v. Cobb Cnty., Georgia, 796 Fed. Appx. 663, 671 (11th Cir. 2020), where Cobb County, Georgia functionally denied and application by adding a condition that made the project un-buildable. The Eleventh Circuit stated that while they were required to look at all the evidence in the record, they "do so only in light of the locality's stated reasons for its decision." Mun. Communications, LLC v. Cobb Cnty., Georgia, 796 Fed. Appx. 663, 671 (11th Cir. 2020).

B. **Argument – Substantial Evidence:**

1 Source and the Defendant disagree as to the legal question that was before the City Commission on the day of its decision. 1 Source presented the question that the Lakeland Planning and Zoning Board's decision violated the City's Land Development Code as pre-empted by federal law because the decision amounted to an effective prohibition of Verizon from solving its gap in service. Dkt. 20. The Defendant contends that the City's decision to deny the application, based upon its LDC Section 5.18, was supported by substantial evidence in the record.

However, the City Commission, as advised by its own attorney, took great pains to avoid addressing federal law component:

> So the bottom line is the Eleventh Circuit simply has not decided this issue, and if the Eleventh Circuit has not decided the issue and no -- you know, the Middle District has not decided the issue, then how can you conclude that the planning and zoning board made a mistake in applying the law? That -- so that -- that's my opinion on the issue. – Palmer Davis. Dkt. 20-19 p. 127 l. 8 – 15.

> To the commission, I want to just make a couple observations. We need to work from a motion that measures whether or not the planning and zoning committee up -- did their job. So upholding their decision or not upholding their decision would be my recommendation on the original motion. Our jurisdictional valuation is limited to their assessment. That's it. It has nothing to do with coverage, with health, with property values. Any of those considerations are beyond the scope of what we're measuring here or even need. So the question is: Did they make the right decision? And so I would entertain a motion to that. – Mayor Mutz. Dkt. 20-19 p. 141 l. 13 – 142 l. 2.

If the City Commission had brought the issue up to a *de novo* hearing, weighed the evidence on whether there was an effective prohibition, and simply stated that they disagreed with the findings or the test, the Court would be powerless to re-weigh that decision. However, the City Commission did not address effective prohibition, but merely stated that the denial was proper under the substantive standards of LDC Section 5.18. Dkt. 20-19 p. 155 l. 11 – 14. The City Commission's decision may have been supported by a mountain of substantial evidence, but it was answering a completely different question than what 1 Source had presented to the City Commission. As such, no decision was made on the

Effective Prohibition question and a decision that is not made inherently cannot be supported by substantial evidence.

### III. Effective Prohibition

**A. Law – Effective Prohibition:**

### i. *Fourth Circuit Rule*

The Defendant invites the Court to adopt the Fourth Circuit's minority rule on effective prohibition, which finds that as long as an ordinance, law, or decision does not result in "a 'blanket ban' on wireless service," the ordinance, law, or decision should be upheld. Cellular S. Real Estate, Inc. v. City of Mobile, Alabama, CV 15-00387-CG-B, 2016 WL 3746661, at *10 (S.D. Ala. July 8, 2016). The Fourth Circuit rule has been expanded somewhat to ask if denial of an individual tower application would result in a situation that is tantamount to a blanket prohibition on wireless service in the area the tower is intended to serve. See T-Mobile Ne. LLC v. Fairfax Cnty. Bd. of Supervisors, 672 F.3d 259, 266 (4th Cir. 2012); See also AT&T Wireless PCS, Inc. v. City Council of City of Va. Beach, 155 F.3d 423, 428 (4th Cir. 1998); 360 Degrees Commc'n Co. of Charlottesville v. Bd. of Supervisors of Ablemarle County, 211 F.3d 79, 88 (4th Cir. 2000) (holding that provider has burden of demonstrating that "denial of its application for the one particular site is tantamount to a prohibition of service" and that "further reasonable efforts are so likely to be fruitless that it is a waste of time even to try").

### ii. *Provider's Service Rule*

Conversely, the Middle District, as well as the Southern District of Florida and the Northern District of Alabama have tended to apply a two-prong analysis that asks if the provider possesses a significant gap in service (the "Providers Service Rule") and if alternates to the proposed site would be less intrusive than the proposed site (the "Least Intrusive Means Test"). PI Telecom Infrastructure, LLC v. City of Jacksonville, FL, 104 F. Supp. 3d 1321, 1346-1349 (M.D. Fla. 2015), T-Mobile South LLC v. Cty of Margate, 2011 WL 1303898, *4 – 8 (S.D. Fla. 2011), TowerCom V, LLC v. City of Coll. Park, GA, 1:13-CV-530-SCJ, 2013 WL 4714203 (N.D. Ga. Aug. 21, 2013), T-Mobile South, LLC v. City of Milton, 2015 WL 13687970, *4 – 9 (N.D. Ga. 2015).

### a. *Significant Gap:*

When analyzing under the Provider's Service Rule, the court will review multiple factors and decide based upon the totality of facts before it, giving weight to objective evidence and the experience basis of the witnesses before it. Wireless carriers can generally define their acceptable level of service. Omnipoint Holdings, Inc. v. City of Cranston, 586 F.3d 38, 49 (1st Cir. 2009). Further, citizen and Adjudicating Board test drives are insufficient evidence to refute supporting studies submitted into the record by a wireless carrier. Indus. Communications & Elecs., Inc. v. O'Rourke, 582 F. Supp. 2d 103, 108 - 109 (D. Mass. 2008). See also Metropcs

Inc. v. City & County of San Francisco, C 02-3442 PJH, 2006 WL 1699580, at *10 (N.D. Cal. June 16, 2006). Data on consumer performance can also establish a gap, but specific consumer data is not required. TowerCom at 9.

The court will also address the physical environment of the gap area. Geographic size of the gap is important as small dead spots are not protected under the Telecom Act. T-Mobile W. Corp. v. City of Agoura Hills, 2010 WL 5313398, at 8 (C.D. Cal. Dec. 20, 2010). Again, there is no bright-line rule for determining the minimum geographic size of a significant gap in service. Cranston, at 49. A .75 mile radius gap was acceptable to the Northern District of Georgia. TowerCom V, LLC v. City of Coll. Park, GA, 1:13-CV-530-SCJ, 2013 WL 4714203, at *8 (N.D. Ga. Aug. 21, 2013). Two city blocks were acceptable for the Federal Northern District of California. Metropcs Inc. v. City & County of San Francisco, C 02-3442 PJH, 2006 WL 1699580, at *11 (N.D. Cal. June 16, 2006). Several city blocks in the city of Jacksonville[2] were sufficient for the Middle District of Florida to find a significant gap in service in Pi Telecom. Pi Telecom, at 1348. Well-traveled roads located within the gap area are also relevant to the inquiry. Sprint PCS Assets, L.L.C. v. City of Palos Verdes Estates, 583 F.3d 716, 727 (9th Cir. 2009), Cranston,

---

[2] Based upon a rudimentary area measurement, comparing the RF map in the Pi opinion against google earth, it appears that the "gap" consisted of approximately .19 Square Miles.

at 49, TowerCom at *8, and Augora at 8. So is the population in the area of the gap. Cranston, at 49.

The type of cellular usage in the gap area must also match the coverage level deficiency. T-Mobile Ne., LLC v. Town of Bedford, NH, 17-CV-339-LM, 2018 WL 6201717, at *6 bttm. (D.N.H. Nov. 28, 2018). Specifically, a lack of in building coverage can establish a significant gap in service, particularly in a primarily residential area where calls may most likely be made indoors. Id, at 6 See Pi Telecom at 1346 – 1349; San Francisco 2006, at 10; and Agoura, at 8. Further, federal courts have routinely concluded that in-building coverage may result in effective prohibition. T-Mobile Ne. LLC v. City of Lowell, Mass., CIV.A. 11-11551-NMG, 2012 WL 6681890, at *10 (D. Mass. Nov. 27, 2012). The Middle District of Florida follows this reasoning. In Pi Telecom, the court found that a significant gap in AT&T's wireless service existed, because it lacked signal strength to provide indoor coverage. Specifically, the court stated:

> However, the Court is persuaded by the authority cited by PI Telecom that a lack of in-building coverage can constitute a gap in service, particularly in a primarily residential area where calls may most likely be made indoors. Moreover, the area of weak or no service in this case extends over several blocks, which the Court does not view as an isolated dead spot. The Court is therefore willing to assume that the proposed tower addresses a significant gap in service. Pi Telecom, at 1348.

b. *__Alternatives Analysis: Least Intrusive Means Test__*

The second prong of Effective Prohibition analysis requires the claimant

"show that the manner in which it proposes to fill the significant gap in services is the least intrusive on the values that the denial sought to serve." T–Mobile USA, Inc. v. City of Anacortes, 572 F.3d 987, 997-998 (9th Cir.2009). This means that the claimant must show that a good faith effort has been made to identify and evaluate less intrusive alternatives, e.g., that the provider has considered less sensitive sites, alternative system designs, alternative tower designs, placement of antennae on existing structures, etc. APT Pittsburgh Ltd. P'ship v. Penn Tp. Butler County of Pennsylvania, 196 F.3d 469 (3d Cir. 1999). The Least Intrusive Means Test analyzes the pool of feasible alternates under the local Land Development Code ("LDC") and determines which one would be least intrusive. Margate, at 4. If the least intrusive means to serve the gap in service is the proposed site, effective prohibition exists. Id. If the least intrusive means to serve the gap in service is another available site, there is no effective prohibition. Pi Telecom, at 1349.

Moreover, the Least Intrusive Means analysis is limited to options available to the adjudicator at the time of the decision, not the application. San Francisco 2006, at 13. The adjudicator must analyze factors such as the proximity of the site and the alternates to residential development, their proximity to other towers, and whether the alternates meet the standards of the LDC better than the proposed site. Anacortes, at 997. If the alternate before the adjudicator is in fact a combination of shorter towers, the adjudicator must determine whether the LDC discourages the

proliferation of towers. Id. Finally, movement leaving a gap in coverage, requiring a second tower, can make an alternate more intrusive. T-Mobile S. LLC v. City of Margate, 10-CV-60029, 2011 WL 1303898, at *8 (S.D. Fla. Apr. 4, 2011).

In T-Mobile S. LLC v. City of Margate, the Southern District noted that the parties both acknowledged that a significant gap in T-Mobile's service to the area existed. Id. at 12. It then discussed the federal circuit split regarding tests for eliminating alternates, acknowledging the existence of "the only feasible plan" test, and the "least intrusive means" test, as well as the "tantamount prohibition" minority test in the Fourth Circuit court. Id. The court acknowledged that the Eleventh Circuit had not yet expressly adopted any of the tests but observed that the Eleventh Circuit would be likely to adopt a relaxed version of the "no alternative plan" test, supporting its conclusion by analysing the Eleventh Circuit's treatment of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Id. at 4 – 5. The court then entered an injunction requiring Margate to approve T-Mobile's tower. Id. at 8-12.

The Margate court then went on to note that Congress' intent when creating the statute suggests that courts should interpret it while keeping in mind that Congress enacted it to promote the *"rapid deployment of new telecommunications technologies."* City of Rancho Palos Verdes v. Abrams, 544 U.S.C 113, 115 (2005). Furthermore, Congress also went on to note that the courts construing the TCA

should allow local governments to maintain authority over land-use matters under the condition that the result of local governmental action still supports and allows cellular phone coverage in geographic areas with significant gaps in coverage. City of Margate, at 8. These "analytical guideposts" that have been extracted from RLUIPA makes it apparent that the Eleventh Circuit would adopt a test more favorable to service providers than the "no alternative" standard contained in the Only Feasible Plan Test and the Least Intrusive Means Test more in line with the purpose of the TCA. Id.

It has been established that the applicant must undertake a reasonable and good faith inquiry of alternates. TowerCom, at 10. Furthermore, an applicant cannot eliminate alternates based upon conclusory statements or very little evidence as it fails reasonableness. 360 Degrees, at 88. Likewise, summarily dismissing alternates or sites proposed by a local government fails reasonableness. Cellco P'ship v. Town of Grafton, Massachusetts, 336 F. Supp. 2d 71, 83 - 84 (D. Mass. 2004). However, speculative alternates are not alternate sites. See City of Cranston at 39. Furthermore, repeated failures to investigate alternate sites are unreasonable. VoiceStream Minneapolis, Inc. v. St. Croix Cnty., 342 F.3d 818, 833 (7th Cir. 2003). Failure to look at alternate RF deployment configurations on existing sites and upgrades to handoff tower sites will also fail to meet this reasonableness standard. Cellco P'ship v. Bd. of Sup'rs of Fairfax County, Va., 140 F. Supp. 3d 548, 585 (E.D.

Va. 2015); Town of Grafton, at 83. Moreover, failure to search for alternates at all also fails reasonableness. Pi Telecom, at 1350. Overall, the inquiry only needs to be a commercially reasonable inquiry and pursuit beyond commercial reasonableness is not necessary. Cranston, at 53; See City of Margate at 6.

The Court in Anacortes in addressing the issue of alternatives stated:

> the provider has the burden of showing that the denial of its proposal will effectively prohibit the provision of services. *Sprint II*, 543 F.3d at 579. A provider makes a prima facie showing of effective prohibition by submitting a comprehensive application, which includes consideration of alternatives, showing that the proposed WCF is the least intrusive means of filing a significant gap. A locality is not compelled to accept the provider's representations. However, when a locality rejects a prima facie showing, it must show that there are some potentially available and technologically feasible alternatives. The provider should then have an opportunity to dispute the availability and feasibility of the alternatives favored by the locality. Anacortes, 572 F.3d at 997-98 (9th Cir. 2009).

**B.     Argument: Effective Prohibition.**

1 Source submitted an application to build a tower to address Verizon's gap in service. Verizon's gap in service was larger than the gap in Pi Telecom. The gap had heavily traveled roads, like TowerCom and Anacortes. 1 Source observed a sizeable population per the census data and Verizon' RF engineer testified that it had over 5000 unique connections in the area per day. Dkt. 20-19, p. 42, l. 24.

1 SOURCE looked at 14 alternate sites, which consisted of properties within Verizon's search ring and just outside it. Dkt. 20-6 p. 1 - 26. 1 Source additionally re-analyzed and performed follow up inquiry on properties within Verizon's search

ring as well as sites suggested by Defendant. None of the sites were either available, acceptable to Verizon, or less intrusive under the City's LDC than the site proposed by 1 Source. As observed by the Court in <u>City of Cranston</u>, the standard for evaluating alternates is, "… a practical inquiry into feasible, available alternatives. <u>City of Cranston</u>, at, 52-53; <u>See</u> <u>City of Anacortes</u>, 572 F.3d at 997-98 (considering the availability of proposed alternatives). Defendant did not accept 1 Sources representations and did not show that there were some potentially available and technologically feasible alternatives at the time of the decision.

    The Defendant now raises this after the fact the issue of using small cell technology to address the coverage and capacity issues. Setting aside the issue this presents under the Rules as a possible attempt to prejudice the litigation with a possible subsequent remedial measure, federal caselaw has already confronted after the fact alternatives. The <u>San Francisco 2006</u> Court found that the universe of alternate sites exists as it stands before the dias. <u>San Francisco 2006</u>. at *13. Also, 1Source in the application process presented a prima facie showing of effective prohibition under <u>Anacortes</u> *supra* that was not addressed by Defendant in its decision.

    However, even if the Court were to entertain the proposed evidence, testimony will be provided that while small cell technology cannot truly solve the gap in service

because it cannot operate during power outages, which makes the solution fundamentally different than a macro tower.

Verizon's gap in service consisted of a lack of coverage in the places where Verizon users connected to the network, in Vehicles and inside buildings. Dkt. 20-19 p. 37 - 43. As the Middle District observed in <u>Pi Telecom</u>, it is appropriate to consider whether coverage exists inside buildings. <u>Pi Telecom</u>, at 1348, *See* <u>San Francisco 2006</u>. at *11 <u>See also</u> <u>T-Mobile S., LLC v. City of Roswell, Georgia,</u> *1:10-CV-1464-AT, 2023 WL 2563227, at *14 (N.D. Ga. Mar. 17, 2023),* (where the Eleventh Circuit observed that the FCC interprets Effective Prohibition review as a standard friendlier to the wireless industry than any of the gap based tests.) Further, 1 Source also provided evidence that Verizon's network lacked capacity to reliably accept additional traffic without the Harden Blvd Tower. In other words, when evaluating a gap in service, coverage is comparable to a highway existing while capacity is comparable to that highway possessing enough lanes to handle the vehicles that go down them.

        Respectfully submitted,

        <u>s/ MATTANIAH S. JAHN, ESQ.</u>
        MATTANIAH S. JAHN, ESQ
        Florida Bar No. 0105256
        Mattaniah S. Jahn, P.A.
        935 Main Street, Suite C4
        Safety Harbor, FL 34695
        Primary email: mjahn@thelawmpowered.com
        Secondary email: smurphy@thelawmpowered.com

Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 30, 2023, a true and correct copy of the foregoing Amended Complaint was filed using CM-ECF, which will serve a notice of electronic filing to all counsel of record.

s/ MATTANIAH S. JAHN, ESQ.
MATTANIAH S. JAHN, ESQ
Florida Bar No. 0105256
Mattaniah S. Jahn, P.A.
935 Main Street, Suite C4
Safety Harbor, FL 34695
Primary email: mjahn@thelawmpowered.com
Secondary email: smurphy@thelawmpowered.com
Attorney for Plaintiff

s/ DAVID M. BLUM, ESQ.
DAVID M. BLUM, ESQ.
Florida Bar No. 0632759
Mattaniah S. Jahn, P.A.
935 Main Street, Suite C4
Safety Harbor, FL 34695
Primary email: dblum@thelawmpowered.com Secondary email: david@davidblumlaw.com
Attorney for Plaintiff